Klavon *v.* Tindall et ux., Appellants.

Argued November 15, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Louis Vaira,* with him *William D. Forsyth,* for appellants.

*Harold L. Neuwirth,* with him *Maurice L. Kessler,* for appellee.

Opinion by Ervin, J., January 17, 1956:

This case arose on a bill in equity filed by plaintiff to compel defendants, husband and wife, owners of adjoining property, to remove obstructions which they had placed in an alleyway on their premises and to cease and desist from interfering with plaintiff's free and unobstructed use of the same. Plaintiff also sought to recover damages alleged to have been suffered as the result of the obstructions of the alleyway. The chancellor concluded that plaintiff had acquired an easement in the alleyway, directed the immediate removal of the obstructions and enjoined further interference with plaintiff's right to the use of the easement. However, no damages were found to have resulted from the interference by defendants in plaintiff's use of the alleyway. Defendants' exceptions were dismissed by the court in banc, and this appeal followed.

Plaintiff and defendants are residents of the City of Pittsburgh and owners of adjoining lots on the northwest side of Penn Avenue in the sixth ward, the lot of defendants lying on the southwesterly side of plaintiff's lot. Each lot has a frontage of 24 feet on the northwest side of Penn Avenue with a uniform depth of 130 feet to Mulberry Way. The buildings erected on the plaintiff's lot consist of a two story brick building used for storeroom and residential purposes known as 2837 Penn Avenue and a two story brick building on the rear known as 2834-1/2 Mulberry Way containing two apartments. Between the two buildings on plaintiff's lot there is a yard. The property presently owned by plaintiff had originally been acquired by her husband in 1920. In 1927 title became vested in plaintiff and her husband as tenants by the entirety and in 1935 title became vested solely in the plaintiff. At the time defendants acquired their property on May 11, 1951 there was erected thereon a three story brick building used

for office and residential purposes known as 2835 Penn Avenue. At the rear of this building there was also a two story brick building and on the rear area of the lot there were four or five outhouses and some coal boxes for the use of tenants. There was also a yard area between the buildings fronting on Penn Avenue and those in the rear of the lot. Shortly after acquiring their property defendants tore down the outhouses and coal bins and erected a one story corrugated iron building in which there is presently conducted a boiler repair and welding business. This building is approximately 43 feet long and 23 feet wide and covers the width of defendants' lot beginning at the rear of the two story brick building immediately behind the dwelling of defendants fronting on Penn Avenue. The alleyway which is the subject of the present controversy is described in the 5th finding of fact by the chancellor as follows: "5. The front building on defendants' property known as 2835 Penn Avenue does not occupy the full width of defendants' lot, the easterly side thereof being separated from the westerly side of plaintiff's front building by a paved alleyway two and 71/100 (2.71) feet wide and extending in length from Penn Avenue northwestwardly 40 feet to the rear of defendants' front building and to a yard area which exists between defendants' front building and their corrugated iron shop. Prior to the erection of the shop by defendants, this yard area had existed between said front building and a rear building similar to the rear building of plaintiff, which had been razed before defendants acquired title. While said rear residential building had existed on defendants' property and thereafter until the erection of the shop building, said yard area had been separated from a similar yard area on plaintiff's property by a wooden fence in which had been constructed two openings with gates, one near the

front buildings and one near the rear buildings. Within defendants' yard area there had existed for many years outbuildings with toilet accommodations for the occupants of the respective buildings aforementioned."

Since 1920, when the property at 2837 Penn Avenue was acquired by plaintiff's husband and he and the plaintiff moved there to live, the alleyway adjoining the plaintiff's property situate on the premises of the defendants and running between the buildings fronting on Penn Avenue together with the yard area in the rear of defendants' dwelling and the gate openings between the properties had been used by the plaintiff, her husband, their tenants in both buildings on their lot and visitors, tradesmen and others for the purpose of ingress and egress to the buildings and the apartments located therein. As a result of the erection of the corrugated iron building by defendants access to plaintiff's yard through one of the openings in the fence between the properties in the rear part of the yard area was cut off but it was still possible to use the alleyway from Penn Avenue to gain access to plaintiff's property in the other opening in the fence between the two rear yards. However, in September 1952 the defendants barricaded the entrance to the alleyway with an iron gate, bars and corrugated sheet iron and blocked the opening between the two rear yards by means of an iron screen. Plaintiff thereupon filed a bill of complaint in equity to enforce her right to the use of the alleyway and the opening in the fence between the yard areas at the rear of the buildings.

There is no dispute as to the existence of the alleyway and the continuous use thereof by plaintiff, her husband, their tenants and others without objection since 1920. The chancellor therefore properly concluded that plaintiff had acquired an easement by prescription in the alleyway adjoining her property situate on

the premises of the defendants. Where one uses an easement whenever he sees fit, without asking leave, and without objection, the use is adverse, and by such an uninterrupted adverse enjoyment for 21 years, the user acquires title by prescription. *Mather-Klock, Inc. v. Plymire et al.,* 349 Pa. 194, 36 A. 2d 802; *Brown v. McConnell,* 173 Pa. Superior Ct. 94, 93 A. 2d 896.

Appellants contend that equity has no jurisdiction to grant the relief sought by the plaintiff in this case. In support of this contention appellants rely principally on *Godino v. Kane,* 26 Pa. Superior Ct. 596, and *Ohringer Home Furniture Company v. Hollingsworth,* 375 Pa. 285, 100 A. 2d 62. But those cases are inapposite. In each there was a substantial dispute in the evidence concerning the nature and extent of the use relied on to establish the right to an easement. It is well settled that the owner of the land has the burden of proving that the use of an easement thereon was under some license, indulgence, or special contract inconsistent with a claim of right by the other party. *Garrett v. Jackson,* 20 Pa. 331; *Brown v. McConnell,* supra. In the instant case appellants failed to sustain their burden of proof. As stated in the adjudication of the learned chancellor, "In our present case defendants in no way undertook their burden to show that plaintiff's rights were permissive and terminable. They offered no evidence on this point although the evidence offered by plaintiff as to use was extensive and convincing." Where the right to an easement is clear and there is no serious dispute as to any of the material facts, equity will assume jurisdiction. *Hunter v. McKlveen,* 353 Pa. 357, 45 A. 2d 222. Pertinent and applicable here is the following statement by the late Judge Dithrich in *Overly v. Hixson,* 169 Pa. Superior Ct. 187, 193, 82 A. 2d 573: "It is true that equity has no jurisdiction to restrain by injunction a trespass of a permanent nature, such as the

obstruction of a right-of-way, where the legal right relied on by plaintiffs is in doubt. In that case the right must first be determined in an action at law. Lackawanna Ice Co. v. Weingartner, 328 Pa. 362, 195 A. 893; Drum v. Dinkelacker, 79 Pa. Superior Ct. 91. But where the right is clear and there is no serious or substantial dispute as to the material facts, a court of equity may exercise its power without a prior adjudication at law. Piro v. Shipley, 211 Pa. 36, 60 A. 325. To oust the jurisdiction of equity 'It is not enough for the defendant to deny the plaintiff's right; his denial must be based upon facts which show a substantial dispute.' Miller v. Lynch, 149 Pa. 460, 464, 24 A. 80." We are all agreed appellants have failed to show any basis upon which to oust the jurisdiction of the chancellor.

Appellants' contention that appellee is precluded from asserting a right to an easement because of an offer made by her husband to buy or lease the alleyway is without merit. Testimony given by defendants as to this offer to buy or lease the alleyway was denied by appellee's husband. Moreover, there is no evidence of any authority in the appellee's husband to so bind her and the chancellor on ample evidence found that "Plaintiff has not acknowledged defendants' title to be free of the easement she claims over it."

Decree affirmed.